UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARMANDO CARDENAS, JOSE F. CARDENAS, JUANITA SENTENO, VERONICA SIMMONS BAILEY, ISAIAH ALEXANDER, KATHY ALEXANDER AND SHONDA TATE on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> A.J. PIEDIMONTE AGRICULTURAL DEVELOPMENT, LLC; JAMES J. PIEDIMONTE & SONS, INC.; JAMES J. PIEDIMONTE & SONS, LLC; MAGC, INC. and ANTHONY JOSEPH PIEDIMONTE, in his individual capacity, and SCOTT JAMES BENNETT, in his individual capacity <br><br> Defendants. | Civil Action No. <br><br> COLLECTIVE AND CLASS ACTION <br><br> JURY TRIAL REQUESTED <br><br><br> **COMPLAINT** |

## PRELIMINARY STATEMENT

1.      This is a Collective and Class Action on behalf of farmworkers who worked strenuously for long hours under grueling conditions in Defendants' large-scale agricultural and produce packaging, storage and distribution business but were never paid even the minimum hourly rates required by law and, in many instances, forced to live in overcrowded and substandard housing.

2.      Plaintiffs were employed by Defendants for varying lengths of time.  Over the past decade, Defendants also increasingly sought to employ temporary foreign laborers through the H-2A visa program.  This program is a means of seasonally importing non-U.S. citizen

1

farmworkers whose presence, mobility and activities in this country are tightly controlled by their employer.  The H-2A regulations require Defendants to first offer such employment to U.S. workers and to pay local and domestic employees such as Plaintiffs at least the same hourly rate set forth for the H-2A program.  Defendants instead paid Plaintiffs substantially less than the rate required for H-2A workers whose numbers in the Defendants' business have grown each year.

3.      Plaintiffs regularly worked more than forty (40) hours in a work week, including time processing and packaging agricultural produce which Defendants acquired from other farms and from which Defendants profited.  Federal and state law requires Defendants to pay a premium rate for such overtime hours of labor but Defendants never paid Plaintiffs more than their regular hourly rates of pay.

4.      Plaintiffs seek for themselves and for all similarly situated individuals damages, declaratory, and injunctive relief for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the regulations of the federal H-2A guest worker program and breach of contract.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, this action arising under the laws of the United States, by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce, and pursuant to the FLSA, 29 U.S.C. § 201 et seq., and AWPA, 29 U.S.C. § 1854(a).

6.      With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims are so related to the federal claims that

2

they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), all Defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## **PARTIES**

8.      Plaintiff Armando Cardenas currently resides in St. Joseph County, Indiana.

9.      Plaintiff Jose F. Cardenas currently resides in St. Joseph County, Indiana.

10.     Plaintiff Juanita Senteno currently resides in Hillsborough County, Florida.

11.     Plaintiff Veronica Simmons Bailey currently resides in Hillsborough County, Florida.

12.     Plaintiff Isaiah Alexander currently resides in Orleans County, New York.

13.     Plaintiff Kathy Alexander currently resides in Orleans County, New York.

14.     Plaintiff Shonda Tate currently resides in Orleans County, New York.

15.     Plaintiffs consent in writing, annexed hereto, to become party Plaintiffs in this action.

16.     Plaintiffs Armando Cardenas, Jose F. Cardenas, Juanita Senteno, and Veronica Simmons Bailey, during their employment by Defendants, were tasked with planting, picking, chopping and/or packing crops on a temporary or seasonal basis and were required to be absent overnight from their respective permanent places of residence.  Each of these Plaintiffs was, during their employment by Defendants, a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(a).

17.     Plaintiffs Shonda Tate, Isaiah Alexander and Kathy Alexander were, during their employment by Defendants, not required to be absent overnights from their permanent places of residence and were seasonal agricultural workers pursuant to the statutory definition of 29 U.S.C. § 1802(10)(a).

18.     James J. Piedimonte & Sons, Inc. is a New York domestic business corporation with its principal executive office located at 88 Cadbury Way, Holley, NY 14470.

19.     James J. Piedimonte & Sons, LLC is a New York domestic business corporation with its principal executive office located at 88 Cadbury Way, Holley, NY 14470.

20.     A.J. Piedimonte Agricultural Development, LLC is a New York domestic business corporation with its principal executive office located at 88 Cadbury Way, Holley, NY 14470.

21.     MAGC, Inc. is a New York domestic business corporation with its principal executive office located at 88 Cadbury Way, Holley, NY 14470.

22.     Defendant Anthony Joseph Piedimonte resides in Orleans County, New York.

23.     At all times relevant to this Complaint, Defendant Anthony Joseph Piedimonte was an owner and manager of Defendants James J. Piedimonte & Sons, Inc., James J. Piedimonte & Sons, LLC, A.J. Piedimonte Agricultural Development, LLC, and MAGC, Inc. (together "Corporate Defendants").

24.     At all times relevant to this Complaint, Defendants Anthony Joseph Piedimonte, Scott James Bennett and Corporate Defendants (collectively "Defendants") functioned as a single enterprise, engaged in related activities for a common business purpose under common ownership and management.

25.     At all times relevant to this Complaint, Defendant Anthony Joseph Piedimonte had the authority to, and did in fact, exercise active, operational control over all aspects of the day-to-day functions of Corporate Defendants.

26.     Defendant Anthony Joseph Piedimonte had the power to establish the terms and conditions of employment of Corporate Defendants' employees, including Plaintiffs, and did exercise this power.

27.     Defendant Anthony Joseph Piedimonte had the authority to, and did in fact, exercise active control over Corporate Defendants' operational enterprise, including but not limited to the power to hire and fire its employees, including Plaintiffs.

28.     Defendant Anthony Joseph Piedimonte had the authority to, and did in fact, exercise active control over Corporate Defendants' operational enterprise, including but not limited to control over employee work schedules, including Plaintiffs' work schedule.

29.     Defendant Anthony Joseph Piedimonte had the authority to, and did in fact, exercise active control over Corporate Defendants' operational enterprise, including but not limited to maintaining the entity and its employment records, including Plaintiffs' records.

30.     At all times relevant to this Complaint, Defendant Anthony Joseph Piedimonte acted directly and indirectly in Corporate Defendants' interest in relation to its employees, including Plaintiffs.

31.     Defendant Scott James Bennett resides in Orleans County, NY.

32.     At all times relevant to this Complaint, Defendant Scott James Bennett functioned as a manager of Corporate Defendants' enterprise in and around Holly, NY.

33.     At all times relevant to this Complaint, Defendant Scott James Bennett possessed and exercised authority directly over Plaintiffs' conditions of employment with Defendants including Plaintiffs' working hours, Plaintiffs' work assignments, discipline of Plaintiffs and Plaintiffs' wages.

34.     Defendant Scott James Bennett signed Defendants' H-2A clearance orders on behalf of Defendants, thereby certifying to the U.S. government that Defendants would comply with their legal obligations under the H-2A program.

35.     At all times relevant to this action, Plaintiffs were engaged in interstate commerce or in the production of goods for interstate commerce while working for Defendants. At all times relevant to this action, Defendants have constituted an enterprise engaged in commerce, and in operating their business, have performed related activities through unified operation or common control for a common business purpose.

36.     At all times relevant to this action, Defendants have employed two (2) or more individuals, including Plaintiffs, in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce including food products, agricultural products, produce, and packaging materials.

37.     Defendants' annual gross volume of sales made or business done was not less than $500,000 in each of the past three (3) fiscal years.

38.     At all times relevant to this action, Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

39.     At all times relevant to this action, Defendants were "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d), and NYLL, N.Y. Lab. Law § 190(2).

6

40.     At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL, N.Y. Lab. Law § 190(2).

41.     At all times relevant to this action, Defendants were agricultural employers pursuant to the statutory definition of AWPA, 29 U.S.C. §1802(2).

## FACTS

42.     Defendants own and operate an agriculture, produce storage and food packaging business in and around Holly, NY.

43.     Defendants own more than three thousand acres of land on which they grow for sale a range of fruit and vegetables including tomatoes, cucumbers, green beans, cabbage and zucchini.

44.     Defendants own and operate a large packing facility on their property which is used to store, sort, and package produce from Defendants' farm as well as other produce such as apples and Brussels sprouts brought to the packing facility from other farms for sorting, storage and packaging.

45.     Defendants annually employ scores of workers to perform a range of physical labor including planting, weeding, picking, chopping, sorting, storing, cleaning and driving.

46.     Defendants hire H-2A foreign workers to perform all of the above described physical labor and these H-2A employees regularly work alongside Defendants' domestic employees.

### Defendants' H-2A Applications

47.    From 2012 to present, Defendants have annually applied to the federal Department of Labor to employ H-2A workers.

48.    As part of the H-2A applications, Defendants assured the federal government that they would comply with all federal and state employment laws.

49.    Pursuant to the regulations governing the H-2A program, Defendants were required to pay all workers performing tasks covered by its H-2A applications at least the then applicable Adverse Effect Wage Rate ("AEWR") as promulgated by the Department of Labor. The tasks specified in Defendants' H-2A applications and clearance orders included planting and hand harvesting cucumbers, peppers, cabbage and squash; packing of cucumbers, peppers, cabbage, squash and beans; and other job duties as assigned by management.

50.    The AEWR in New York State was $10.56 per hour in 2012, $10.91 in 2013, $11.22 in 2014, $11.26 in 2015, $11.74 in 2016, $12.38 in 2017 and $12.38 in 2018.

51.    At all times relevant to this Complaint, H-2A workers were employed by Defendants for about eight (8) months each year, roughly from the end of April until the end of December.

### Plaintiffs' Periods of Employment, Work Assignments, Hours and Wages

52.    Plaintiff Armando Cardenas was employed by Defendants in total for approximately twenty-four (24) years, from 1991 until 2004, and again from 2006 through February 2, 2016, but separated from employment from late December to late January each year due to the seasonal nature of his position.  Plaintiff Armando Cardenas was paid $9.25 per hour

in 2012, $9.25 per hour in 2013, $11.22 per hour in 2014, $11.22 per hour in 2015, and $11.22 per hour in 2016.

53.     Plaintiff Jose F. Cardenas was employed by Defendants for approximately five (5) years, from 2010 through February 2, 2016 but separated from employment from late December to late January each year due to the seasonal nature of his position.  Plaintiff Jose F. Cardenas was paid $8.50 per hour in 2012, $8.50 per hour in 2013, $11.22 in 2014, $11.22 per hour in 2015, and $11.22 per hour in 2016.

54.     Plaintiffs Armando Cardenas and Jose F. Cardenas' job duties included loading and unloading produce, storing produce, and preparing produce for storage. Plaintiffs Armando Cardenas and Jose F. Cardenas typically worked from 7 am to 8 pm but would sometimes work to as late as 3 am depending on the season.  Plaintiffs Armando Cardenas and Jose F. Cardenas regularly worked Monday through Saturday and sometimes also worked on Sunday.

55.     Plaintiff Juanita Senteno worked for Defendants from on or about June 19, 2016 to on or about August 4, 2016.  Plaintiff Juanita Senteno was paid $9.00 per hour.

56.     Plaintiff Veronica Simmons Bailey worked for Defendants from on or about July 9, 2016 to on or about late October of 2016.  Plaintiff Veronica Simmons Bailey was paid $9.00 per hour.

57.     Plaintiff Isaiah Alexander worked for Defendants from on or about July 2015 to on or about the summer of 2018, with intermittent periods of non-employment.  Plaintiff Isaiah Alexander was paid approximately $8 per hour in 2015, $9 per hour in 2016, $9.78 in 2017 and between $9.70 and $10.40 in 2018.

58.     Plaintiff Kathy Alexander worked for Defendants from on or about August 2015 to on or about December 2015 and then again from on or about August 2017 to on or about September 2017.  Plaintiff Kathy Alexander was paid approximately $8 per hour in 2015, and $9.70 in 2017.

59.     Plaintiff Shonda Tate worked for Defendants from on or about August 2015 to on or about December 31, 2015 and then again from on or about August 2016 to on or about October 2016.  Plaintiff Shonda Tate was paid approximately $8.45 per hour in 2015 and $9 per hour in 2016.

60.     During their respective periods of employment by Defendants, Plaintiffs Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander and Shonda Tate each participated in the picking, planting, chopping, cleaning, sorting and/or packing of fruits and vegetables including but not limited to cucumbers, green beans, corn, peppers, squash, tomatoes, cabbage, Brussels sprouts, and apples.

61.     During their respective periods of employment by Defendants, Plaintiffs Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander and Shonda Tate typically began working between 6 am and 8 am and finished working between 6 pm and 8 pm, sometimes working later, with a regular one hour lunch break.  Plaintiffs Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander and Shonda Tate regularly worked Monday through Saturday and sometimes also worked on Sunday.

*Plaintiffs' Housing*

62.     In 2016, Plaintiffs Juanita Senteno and Veronica Simmons Bailey were housed by Defendants together with eight (8) other migrant farmworkers and/or minor children family members in a single-family house with only two rooms and one toilet.

63.     Upon information and belief, in 2017 Defendants again housed migrant farm workers in the same structure, this time placing seventeen (17) individuals in overcrowded and unsafe housing conditions.

*Defendants' Uniform Policies and Practices Toward Plaintiffs and All Employees*

64.     Plaintiffs performed a wide range of labor in Defendants' business operation including planting, picking, chopping, cleaning, sorting and packing prior to delivery for storage agricultural or horticultural commodities, which were grown on Defendants' property, in their unmanufactured states.  This work was agricultural employment within the meaning of the 29 U.S.C. § 1802(3), thereby entitling them to the protections of AWPA.

65.     Plaintiffs also regularly participated in the cleaning, sorting and packing of produce from external agricultural operations which was brought to Defendants' property for such purposes.  This work was not "agriculture" within the meaning of 29 U.S.C. § 203(f) and, therefore, covered by the overtime provisions of FLSA.

66.     In each year from 2012 through 2018, Defendants employed at least twenty (20) to twenty-five (25) non-H-2A workers.  These individuals ("Plaintiff Class") performed the same work, were required to work the same schedule and hours, and were paid in the same manner as Plaintiffs in that they were paid less than the AEWR and were never paid a premium rate for overtime hours.

67.     Plaintiffs and Plaintiff Class members regularly worked alongside Defendants' H-2A workers, performing the same tasks as them, including tasks which were specified on Defendants' clearance orders.

68.     At the time that Plaintiffs and Plaintiff Class members began working for Defendants, Defendants failed to furnish them with written disclosures of their wage rates or written disclosures of the other information required by NYLL § 195(1) in their primary languages.

69.     Defendants never thereafter furnished Plaintiffs and Plaintiff Class members with written disclosures as required by NYLL § 195(1).

70.     In addition, Defendants never furnished Plaintiffs and Plaintiff Class members with wage statements containing the information required by NYLL § 195(3).

71.     Defendants never paid Plaintiffs and Plaintiff Class members an additional amount of money for days in which they worked more than ten (10) hours as required by 12 NYCRR 142.

72.     During the employment of Plaintiffs and Plaintiff Class members, Defendants failed to post a United States Department of Labor poster advising them of their minimum wage and overtime pay rights as is required by 29 C.F.R. § 516.4.  As a result, Plaintiffs were unaware of their legal rights under these statutes.

73.     Defendants' actions and omissions towards Plaintiffs and Plaintiff Class members alleged above were willful.

**FLSA Collective Allegations**

74.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly-situated employees of Defendants who may opt in to this action pursuant to 29 U.S.C. § 216(b) and who were employed or jointly employed by Defendants in produce packing, cleaning, sorting and storage facility labor and worked more than forty (40) hours in any single work week from August 8, 2015 through the date of preliminary approval of the opt-in class.

75.     Plaintiffs and Plaintiff Class members were subject to the same uniform policies and practices of Defendants and were paid in the same manner.

76.     Specifically, Defendants failed to pay Plaintiffs and Plaintiff Class members a premium rate for each hour over 40 worked in a week in violation of FLSA, 29 U.S.C. § 201 *et seq.*

77.     Plaintiffs are currently unaware of the identities of all of the employees who would be members of the FLSA opt-in class, but this information is readily ascertainable from Defendants' records.   Defendants should therefore be required to provide Plaintiffs with a list – including last known addresses, telephone numbers, and email addresses if known – of all individuals who worked for Defendants since August 8, 2012.

**Rule 23 Class Action Allegations – AWPA Pay Claims**

78.     Plaintiffs bring their AWPA claims for Defendants' failure to pay them at least the applicable AEWR on behalf of themselves and all other persons similarly situated, pursuant to Fed. R. Civ. P. 23(a), (b)(2)-(3).

79.     Plaintiffs seek to represent the following class (the "AWPA Class") with regard to their AWPA pay claims:  all migrant or seasonal agricultural workers (as the terms "migrant

agricultural worker" and "seasonal agricultural worker" are defined in 29 U.S.C. §§ 1802(8) and 1802(10) and 29 C.F.R. §§ 500.20(p) and 500.20(r)) employed by Defendants to perform temporary or seasonal agricultural work during the validity period of Defendants' H-2A clearance order in any year from 2012 to present.

80.     The class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known; however on information and belief the class consists of over seventy-five (75) persons.

81.     Representative Plaintiffs are represented by experienced counsel through the Worker Justice Center of New York who will vigorously prosecute the litigation on behalf of the class.

82.     Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a)     Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

b)     No litigation concerning this controversy has been commenced by any member of the class;

c)     Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case;

d)     A class action can be managed without undue difficulty because the issues presented are common to the class, Defendants are required to maintain detailed records

concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature; and

e)      Upon information and belief, many members of the class have claims for short durations of time and members of the class are dispersed geographically, making traditional joinder impracticable.

83. Common questions of law and fact include:

a)      Whether Defendants had a practice of employing seasonal and migrant U.S. agricultural workers to perform labor which was covered by the H-2A clearance orders and/or performed by H-2A workers;

b)      Whether Defendants had a practice of failing to pay at least the AEWR to seasonal or migrant agricultural workers it employed when those wages were due, in violation of 29 U.S.C. § 1832(a) and 29 U.S.C. § 1822(a);

84.      The claims of Plaintiffs collectively are typical of the claims of the class they seek to represent, and they will fairly and adequately protect the interests of the class.

**Rule 23 Class Action Allegations – NYLL Claims**

85.      Plaintiffs bring their NYLL claims on behalf of themselves and all other persons similarly situated, pursuant to Fed. R. Civ. P. 23(a), (b)(2)-(3).

86.      Plaintiffs seek to represent the following class (the "NYLL Class") with regard to their NYLL claims:  all individuals who were employed or jointly employed by Defendants in produce packing, cleaning, sorting and storage facility labor and who worked more than forty (40) hours in any single work week from August 8, 2012 through the date of preliminary approval of the opt-out class.

87.     The class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known; however on information and belief the class consists of over seventy-five (75) persons.

88.     Representative Plaintiffs are represented by experienced counsel through the Worker Justice Center of New York who will vigorously prosecute the litigation on behalf of the class.

89.     Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

    a)     Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

    b)     No litigation concerning this controversy has been commenced by any member of the class;

    c)     Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case;

    d)     A class action can be managed without undue difficulty because the issues presented are common to the class, Defendants are required to maintain detailed records concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature; and

    e)     Upon information and belief, many members of the class have claims for short durations of time and members of the class are dispersed geographically, making traditional joinder impracticable.

16

90. Common questions of law and fact include:

a)      Whether Defendants had a policy of requiring their employees to clean, sort, store and/or pack produce from external agricultural operations which was brought to Defendants' property for such purposes;

b)      Whether Defendants had a policy of requiring their employees to perform work which was not agriculture within the meaning of 29 U.S.C. § 203(f);

c)      Whether Defendants had a policy of not compensating their employees at a premium rate for hours worked over forty (40) in a workweek;

d)      Whether Defendants had a policy of not paying their employees an additional amount of money for days in which they worked more than ten (10) hours;

e)      Whether Defendants had a policy of not furnishing their employees with written disclosures of their wage rates or written disclosures of the other information required by NYLL § 195(1) in their primary languages; and

f)      Whether Defendants had a policy of not furnishing their employees with wage statements containing the information required by NYLL § 195(3).

91.      The claims of Plaintiffs collectively are typical of the claims of the class they seek to represent, and they will fairly and adequately protect the interests of the class.

## Rule 23 Class Action Allegations – Breach of Contract Claims

92.      Plaintiffs bring their breach of contract claims for Defendants' failure to pay them at least the applicable AEWR on behalf of themselves and all other persons similarly situated, pursuant to Fed. R. Civ. P. 23(a), (b)(2)-(3).

93.     Plaintiffs seek to represent the following class (the "Breach of Contract Class") with regard to their breach of contract claims:  all individuals employed by Defendants to perform agricultural work, including but not limited to produce packing, cleaning, sorting and storage facility labor, during the validity period of Defendants' H-2A clearance order in any year from 2012 to present.

94.     The class is so numerous that joinder of all members is impracticable.  The exact size of the class is not known; however on information and belief, the class consists of over seventy-five (75) persons.

95.     Representative Plaintiffs are represented by experienced counsel through the Worker Justice Center of New York who will vigorously prosecute the litigation on behalf of the class.

96.     Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a)     Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

b)     No litigation concerning this controversy has been commenced by any member of the class;

c)     Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case;

d)     A class action can be managed without undue difficulty because the issues presented are common to the class, Defendants are required to maintain detailed records

18

concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature; and

e)      Upon information and belief, many members of the class have claims for short durations of time and members of the class are dispersed geographically, making traditional joinder impracticable.

97.    Common questions of law and fact include:

a)      Whether Defendants had a practice of employing non-H-2A workers to perform labor which was covered by the H-2A clearance orders and/or performed by H-2A workers;

b)      Whether Defendants had a practice of failing to pay at least the AEWR to individuals who performed labor which was covered by the H-2A clearance orders and/or performed by H-2A workers;

98.    The claims of Plaintiffs collectively are typical of the claims of the class they seek to represent, and they will fairly and adequately protect the interests of the class.

## FIRST CAUSE OF ACTION
### (Fair Labor Standards Act)

99.    Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs.

100.   All Claims set forth in this First Cause of Action are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to 29 U.S.C. § 216(b).

101.   Defendants failed to pay Plaintiffs and other similarly situated employees overtime wages at a rate of one and one half times their regular rate of pay for every hour or partial hour Plaintiffs and other similarly-situated employees worked above forty (40) in a work

week as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* and its implementing

regulations.

102.    Defendants' failure to pay the required overtime wage was willful within the

meaning of 29 U.S.C. § 255 as Defendants knew or showed reckless disregard for the issue of

whether Defendants' conduct was prohibited under the FLSA.

103.    Plaintiffs and other similarly situated employees are entitled to their unpaid

wages, plus an additional equal amount in liquidated damages, as a consequence of Defendants'

unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

104.    Plaintiffs and other similarly situated employees are also entitled to costs of Court

and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (New York Labor Law)

105.    Plaintiffs repeat and reiterate each and every allegation contained in the preceding

paragraphs.

106.    All claims set forth in this Second Cause of Action are brought by Plaintiffs on

behalf of themselves and all other similarly-situated persons pursuant to Rule 23(a) and (b)(2)-

(3) of the Federal Rules of Civil Procedure.

107.    Defendants failed to pay Plaintiffs and other similarly situated employees

overtime and spread of hours wages in violation of NYLL Article 19 and its implementing

regulations.

108.    At no time did Defendants furnish Plaintiffs or other similarly situated workers

with proper written pay notice at the time of hire and when required annually in violation of

NYLL § 195(1).

109.    At no time did Defendants furnish Plaintiffs or other similarly situated workers with a proper written pay notice reflecting Plaintiffs' regular rate of pay, or any changes to Plaintiffs' rate of pay, in violation of NYLL § 195(1).

110.    At no time did Defendants furnish Plaintiffs or other similarly situated workers with proper wage statements, in violation of NYLL § 195(3).

111.    Defendants' failure to pay the required wages as set forth herein was willful within the meaning of NYLL.

112.    Defendants' failure to comply with New York wage and hour protections caused Plaintiffs to suffer loss of wages and interest thereon.

113.    Plaintiffs and other similarly situated employees are entitled to their unpaid wages mandated by NYLL, plus liquidated damages, as a consequence of the Defendants' unlawful actions and omissions, in accordance with NYLL §§ 198, 663, and 681.

114.    For Defendants' violation of NYLL § 195(1), Plaintiffs and other similarly situated workers are entitled to $50 for each work day in which this violation continued to occur, in an amount not to exceed $5,000 per injured party, pursuant to NYLL §198(1-b).

115.    For Defendants' violation of NYLL § 195(3), Plaintiffs and other similarly situated workers are entitled to $250 for each work day in which this violation continued to occur, in an amount not to exceed $5,000 per injured party, pursuant to NYLL §198(1-d).

116.    Plaintiffs and other similarly situated employees also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

## THIRD CAUSE OF ACTION
### (Migrant and Seasonal Agricultural Worker Protection Act – Pay Violations)

117.   Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs.

118.   All claims set forth in this Third Cause of Action are brought by Plaintiffs on behalf of themselves and all other similarly-situated persons pursuant to Rule 23(a) and (b)(2)-(3) of the Federal Rules of Civil Procedure.

119.   Defendants have violated the wage payment regulations of the AWPA.

120.   By failing to pay Plaintiffs and other similarly situated workers overtime wages as required by the FLSA, Defendants failed to pay these workers their wages when due, in violation of the AWPA, 29 U.S.C. §1822(a).

121.   Defendants failed to pay Plaintiffs and other similarly situated workers the AEWR for each and every hour worked.

122.   In failing to abide by the regulations of the H-2A program that require comparably employed U.S. workers and foreign workers with H-2A visas the highest applicable wage rate, in this case the AEWR, Defendants failed to pay Plaintiffs and other similarly situated workers their wages when due, in violation of the AWPA, 29 U.S.C. § 1822(a).

123.   Defendants' violations of the AWPA were the natural result of its conscious and deliberate acts.  These violations occurred as part of Defendants' regular business practices.  Defendants' violations of the AWPA were intentional within the meaning of the Act, 29 U.S.C. § 1854.

124.   Through the failure of the Defendants to comply with the AWPA as described (failing to pay Plaintiffs and others overtime and the AEWR), Plaintiffs and others similarly

situated have suffered loss of wages and interest thereon.  Plaintiffs are entitled to actual and/or statutory damages under AWPA, as well as an additional award of damages up to the amount of their actual damages.

## FOURTH CAUSE OF ACTION
**(Migrant and Seasonal Agricultural Worker Protection Act – Housing Conditions)**
**Plaintiffs Juanita Senteno and Veronica Simmons Bailey**

125.    Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs.

126.    Defendants own or control a facility or real property which is used as housing for migrant agricultural workers.

127.    Defendants are responsible under AWPA for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

128.    Defendants housed Plaintiffs Juanita Senteno and Veronica Simmons Bailey in housing which did not comply with the substantive Federal and State safety and health standards applicable to that housing.

129.    Plaintiffs Juanita Senteno and Veronica Simmons Bailey are entitled to actual and/or statutory damages for Defendants' failure to comply with the migrant agricultural worker requirements of AWPA.

## FIFTH CAUSE OF ACTION
**(Breach of Contract)**

130.    Plaintiffs repeat and reiterate each and every allegation contained in the preceding paragraphs.

131. All claims set forth in this Fifth Cause of Action are brought by Plaintiffs on behalf of themselves and all other similarly-situated persons pursuant to Rule 23(a) and (b)(2)-(3) of the Federal Rules of Civil Procedure.

132. The job orders and any obligations required under 8 U.S.C. § 1188, 28 C.F.R. Part 501, or 20 C.F.R. Part 655, subpart B constitute an enforceable agreement between Plaintiffs and Defendants and are enforceable against Defendants.

133. Defendants materially breached the enforceable agreement with the Plaintiffs by paying Plaintiffs less than the federally mandated AEWR for their work and failing to comply with the overtime provisions of FLSA.

134. Plaintiffs did perform, or at all relevant times were ready to, willing and able to perform, but for Defendants' breach, all of their obligations under their agreement.

135. Defendants' breach of these contract obligations has caused economic damages to the Plaintiffs.

136. Defendants' breach of these contract obligations has caused Plaintiffs to suffer economic damage, emotional injury, and physical harm in an amount to be proven at trial.

WHEREFORE, Plaintiffs request that this Court enter an Order:

i. Declaring that Defendants violated the FLSA, NYLL, and the AWPA regulations and that such violations were willful and intentional;

ii. Enjoining Defendants from further violations of the FLSA, NYLL, and the AWPA regulations;

iii. Tolling the Statute of Limitations for all FLSA, NYLL, and AWPA pay violations, as the Court deems equitable;

iv.        Granting judgment to Plaintiffs and other similarly situated workers for claims of unpaid wages as secured by FLSA as well as an equal amount in liquidated damages;

v.         Granting judgment to Plaintiffs and other similarly situated workers for claims of unpaid wages and liquidated damages, damages for inadequate hiring and wage notices, as well as other damages allowed under New York law, plus prejudgment interest;

vi.        Granting judgment to Plaintiffs and other similarly situated workers for claims of pay violations under AWPA and the H-2A regulations and awarding actual and/or statutory damages to Plaintiffs;

vii.       Granting judgment to Plaintiffs and other similarly situated workers for Defendants' breach of their contractual obligations as set forth in the H-2A clearance job orders and awarding Plaintiffs damages;

viii.      Granting judgment to Plaintiffs Juanita Senteno and Veronica Simmons Bailey for claims of violations of the migrant agricultural housing provisions of AWPA and awarding actual and/or statutory damages;

ix.        Awarding Plaintiffs and other similarly situated workers prejudgment and post-judgment interest as allowed by law;

x.         Awarding the Plaintiffs and other similarly situated workers costs and reasonable attorneys' fees and costs; and

xi.        Granting such further relief as the Court finds just and equitable.

Dated: Rochester, New York
        August 8, 2018

                                **Worker Justice Center of New York**

                                **By:**

                                John Marsella
                                Robert McCreanor
                                1187 Culver Road
                                Rochester, New York 14609
                                Tel: (585) 325-3050
                                jmarsella@wjcny.org
                                rmccreanor@wjcny.org


                                Attorneys for Plaintiffs