UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARMANDO CARDENAS, JOSE F.
CARDENAS, JUANITA SENTENO,
VERONICA SIMMONS BAILEY, ISAIAH
ALEXANDER, KATHY ALEXANDER, and
SHONDA TATE, on behalf of themselves
and all others similarly situated,

                      Plaintiffs,

   -v-

A.J. PIEDIMONTE AGRICULTURAL
DEVELOPMENT, LLC, JAMES J.
PIEDIMONTE & SONS, INC., JAMES J.
PIEDIMONTE & SONS, LLC, MAGC, INC.,
ANTHONY JOSEPH PIEDIMONTE,
in his individual capacity, and SCOTT
JAMES BENNETT, in his individual capacity,

                      Defendants.
_____

18-CV-881-EAW-MJR
DECISION AND ORDER

This case has been referred to the undersigned by the Hon. Elizabeth A. Wolford for all pre-trial matters excluding dispositive motions. (Dkt. No. 29). Presently before the Court is plaintiffs' motion for conditional certification of a Fair Labor Standards Act ("FLSA") collective action. (Dkt. No. 28). The Court heard oral argument on the motion on November 19, 2018. (Dkt. No. 46). For the following reasons, plaintiffs' motion is granted as set forth herein.[1]

## **BACKGROUND**

Plaintiffs Armando Cardenas, Jose F. Cardenas, Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander, and Shonda Tate (collectively,

---

[1] A motion for conditional certification of an FLSA collective action is a non-dispositive motion. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010).

"plaintiffs") bring this action on behalf of themselves and all other similarly situated individuals seeking relief for alleged willful violations of the FLSA overtime compensation requirements by defendants A.J. Piedimonte Agricultural Development, LLC, James J. Piedimonte & Sons, Inc., James J. Piedimonte & Sons, LLC, MAGC, Inc., Anthony Joseph Piedimonte, and Scott James Bennett (collectively, "defendants"). (Dkt. No. 1 (Complaint)).[2] Since the filing of the complaint, several other individuals have "opted in" to the lawsuit by filing "consent to sue" forms with the Clerk of Court.

Plaintiffs allege that defendants comprise a large-scale agricultural and produce packaging, storage, and distribution business operating under common ownership and control. (*Id.* ¶¶1, 18-35, 42-45). Defendants hired plaintiffs and other individuals to work as hourly employees performing physical labor at defendants' worksites in Holley, New York. (*Id.* ¶¶42-46). Plaintiffs performed a range of physical labor for defendants, including planting, weeding, picking, chopping, sorting, cleaning, and driving. (*Id.* ¶¶45-46, 54, 60, 64-65). Plaintiffs also regularly participated in the sorting, cleaning, and packing of produce brought to defendants' property from other sources. (*Id.* ¶¶44, 65). The gravamen of plaintiffs' FLSA claim is that defendants maintained a uniform policy and practice of failing to pay their hourly employees a premium rate for each hour over forty that they worked in a week — *i.e.*, overtime compensation. (*Id.* ¶¶74-76, 101). Defendants dispute that plaintiffs are entitled to overtime compensation, arguing that plaintiffs are exempt from the overtime provisions of the FLSA because they are "agriculture employees" within the meaning of the Act. (*See* Dkt. No. 43-1 (Piedimonte

---

[2] Plaintiffs also seek relief on behalf of themselves and all other similarly situated individuals for defendants' alleged willful violations of New York State Labor Law, the Migrant and Seasonal Agricultural Worker Protection Act, the regulations of the federal H-2A guest worker program, and breach of contract. (*See* Dkt. No. 1 (Complaint)).

Dec.) ¶5). Plaintiffs contend that they are not agriculture employees because some of the work they performed for defendants — namely, cleaning, sorting, and packing produce received from other sources — is outside the definition of "agriculture" under the FLSA. (Dkt. No. 1 (Complaint) ¶65); *see Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 178 (W.D.N.Y. 2008) (finding activities regarding produce purchased from other sources to be outside the scope of the agriculture exemption).

Shortly after commencing this action, plaintiffs filed the instant motion for conditional certification of an FLSA collective action, which, if granted, will allow them to obtain contact information regarding potential opt-in plaintiffs from defendants so that they may notify the potential opt-in plaintiffs of the pendency of this lawsuit and their opportunity to join in as represented plaintiffs. (Dkt. No. 28). Plaintiffs' proposed opt-in class consists of "[a]ll current and former employees who have worked for [d]efendants within the past three years of the filing of the [c]omplaint and the date of final judgment in this matter and who performed physical labor for more than 40 hours in any single work week and were paid on an hourly basis but did not receive overtime compensation." (Dkt. No. 28-1 (Pltfs.' Memo. of Law) at 1). Defendants oppose plaintiffs' motion for conditional certification, but in the event conditional certification is granted, they ask the Court to make certain modifications to plaintiffs' proposal regarding the content and manner of notice to the potential opt-in plaintiff class. (*See* Dkt. No. 43 (Defts.' Memo. of Law)).

## **DISCUSSION**

I.  *Conditional Certification*

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1). The FLSA creates a cause of action against employers who violate the overtime requirement, and affected employees may bring suit against an employer on behalf of "themselves and other employees similarly situated." *Id.* §216(b). "Unlike a representative action under Rule 23 of the Federal Rules of Civil Procedure, where all persons in the defined class are bound by the case outcome unless they affirmatively 'opt out,' an employee does not become a party to an FLSA collective action unless he or she affirmatively 'opts in' by filing written consent with the court." *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *3 (W.D.N.Y. Oct. 14, 2009).

The Court has the discretion to facilitate notice to potential plaintiffs of the pendency of an FLSA lawsuit and their opportunity to opt-in as represented plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). "This is often referred to as certification, although as the Second Circuit Court of Appeals observed in *Myers,* it is not 'certification' in the traditional class action sense and 'nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action.'" *Acevedo v. WorkFit Med. LLC*, No. 14-CV-06221 EAW, 2014 WL 4659366, at *2 (W.D.N.Y. Sept. 16, 2014) (alteration in original) (quoting *Myers*, 624 F.3d at 555 n.10). Courts follow a two-step process to determine whether a lawsuit should proceed as an FLSA collective action:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. . . . At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs. The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers*, 624 F.3d at 555 (internal quotation marks, citations, and alterations omitted). "The first of these steps is typically referred to as 'conditional certification.'" *Acevedo*, 2014 WL 4659366, at *2 (quoting *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012)). "Plaintiffs' burden on a conditional certification motion is 'minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.'" *Id.* at *4 (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations[, and a]ccordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Robbins v. Blazin Wings, Inc.*, No. 15-CV-6340 CJS, 2016 WL 1068201, at *6 (W.D.N.Y. Mar. 18, 2016) (second alteration in original) (quoting *Escobar v. Motorino E. Vill. Inc.*, No. 14 CIV. 6760(KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015)). Given this "fairly lenient" standard, conditional certification is "typically grant[ed]." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345(NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013) (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 322(CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

Here, plaintiffs have submitted sworn declarations and pay stubs from two plaintiffs and one opt-in plaintiff stating that they and other employees worked more than forty hours per week for defendants without receiving overtime compensation. (Dkt. No. 28-5 (Colson Dec.); Dkt. No. 28-6 (Armando Cardenas Dec.); Dkt No. 28-7 (Senteno Dec.)). The opt-in plaintiff, April Colson, further states that defendant Anthony James Piedimonte told her that defendants were not required to pay overtime compensation because their operation consisted of "farm work," a statement which appears to be in reference to the agriculture exemption to the FLSA's overtime requirements. (Dkt. No. 28-5 (Colson Dec.) ¶16). The foregoing evidence is more than adequate to meet plaintiffs' minimal burden of showing that they were victims of a common policy or plan that violated the FLSA. Although defendants have come forward with evidence disputing plaintiffs' contention that defendants did not pay their employees any required overtime compensation, the Court is not at liberty to weigh defendants' contradictory evidence at this stage of the proceeding. *See Acevedo*, 2014 WL 4659366, at *6 ("Defendants' contradictory evidence, while certainly relevant to the merits of Plaintiffs' underlying claims, is not sufficient to defeat a conditional certification motion.").

Defendants raise several arguments in opposition to plaintiffs' motion for conditional certification, none of which are persuasive. Defendants first argue that they were not required to pay plaintiffs overtime compensation because plaintiffs are agriculture employees who are exempt from the overtime requirements of the FLSA. *See* 29 U.S.C. §213(b)(12). However, whether or not the agriculture exemption applies does not come into play until the second stage of the certification inquiry. *Gjurovich*, 282 F. Supp. 2d at 105 ("Whether the positions the Plaintiff held were exempt is not an issue

when deciding whether to authorize notice in an FLSA action."); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (declining to determine at the conditional certification stage whether plaintiffs performed agriculture work). In any event, even if the Court were to consider the agriculture exemption at this stage of the proceeding, plaintiffs have come forward with evidence that the exemption is uniformly inapplicable to plaintiffs and potential opt-in plaintiffs because some of the work they performed for defendants — in particular, work related to produce purchased from other sources — is outside the definition of "agriculture" under the FLSA. (*See* Dkt. No. 28-5 (Colson Dec.) ¶¶12-15, 18)); *see Centeno-Bernuy*, 564 F. Supp. 2d at 178 (finding activities regarding produce purchased from other sources to be outside the scope of the agriculture exemption). While defendants submit evidence to the contrary, the Court is not at liberty to consider defendants' contradictory evidence on this motion. *See Acevedo*, 2014 WL 4659366, at *6.

Defendants also argue that plaintiffs' accusations regarding defendants' alleged policy of not paying overtime compensation are vague and unsupported by any facts. This argument is without merit because, as discussed above, plaintiffs have come forward with evidence indicating that they and other employees worked more than forty hours a week for defendants without receiving overtime compensation. Plaintiffs were not, as defendants argue, required to submit proof of a formal policy reflecting defendants' alleged failure to pay overtime compensation. *See Chhab*, 2013 WL 5308004, at *10 ("[P]laintiffs need not show the existence of a facially unlawful formal policy in order to meet the burden required of them at the conditional certification stage.").

Defendants also argue that plaintiffs and potential opt-in plaintiffs are not "similarly situated" because their alleged job duties and functions, and the time they devoted to each duty and function, are not consistent, and the Court would have to conduct numerous "mini-trials" in order to adjudicate any alleged FLSA violation. (Dkt. No. 43 (Defts.' Memo. of Law) at 8-10). Contrary to defendants' argument, the similarly-situated analysis does not require plaintiffs to show at the conditional certification stage that they performed the same exact job duties. *See Gordon*, 2009 WL 3334784, at *7-8 (rejecting similar "mini-trials" argument and noting that existence of individual claims and defenses does not preclude conditional certification); *Acevedo*, 2014 WL 4659366, at *7 (noting that defendants' argument regarding individualized inquiries "is better considered at the second stage of the FLSA certification inquiry on a fuller factual record").

Relatedly, defendants argue that conditional certification should be denied because the proposed opt-in class is "unmanageable" in that "[t]he determination of liability would necessarily require individualized analyses, turning on testimony as to what each putative class member did on a day-to-day basis at the site where he or she worked, and *to what percentage of time.*" (Dkt. No. 43 (Defts.' Memo. of Law) at 11). However, the weight of authority within the Second Circuit provides that inquiries into tasks performed by individual class members, including the percentage of time spent on each particular task, is not relevant on a motion for conditional certification. *See, e.g.*, *Chhab*, 2013 WL 5308004, at *12.

Finally, defendants argue that conditional certification must be denied if the complaint fails to state a plausible claim for relief under the FLSA. This argument has no relevance here because defendants do not contend that plaintiffs' complaint fails to state

a plausible FLSA claim, nor did defendants move to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Accordingly, for these reasons, plaintiffs' motion for conditional certification is granted. The potential opt-in plaintiff class shall consist of "[a]ll current and former employees who have worked for [d]efendants within the past three years of the filing of the [c]omplaint and the date of final judgment in this matter and who performed physical labor for more than 40 hours in any single work week and were paid on an hourly basis but did not receive overtime compensation." (Dkt. No. 28-1 (Pltfs.' Memo. of Law) at 1). As discussed below, plaintiffs may notify the potential opt-in plaintiffs of the pendency of this lawsuit and their opportunity to opt-in as represented plaintiffs. *See Gordon*, 2009 WL 3334784, at *8 ("A court has the discretion to authorize notification to 'similarly situated' potential plaintiffs . . . .").

II. <u>Content of Notice</u>

Plaintiffs have submitted a proposed notice, consent-to-sue form, and text-message notice to be sent to potential opt-in class members. (Dkt. No. 28-2 (notice); Dkt. No. 28-3 (consent-to-sue form); Dkt. No. 28-4 (text message notice)). Defendants suggest five revisions to the notice form (Dkt. No. 43 (Defts.' Memo. of Law) at 12-13), which the Court will discuss *seriatim*.

First, defendants argue that the title on plaintiffs' proposed notice is "overbroad, imprecise and unnecessary." (*Id.* at 13). Having reviewed the title, the Court finds that it adequately summarizes the nature and purpose of the notice form. Thus, defendants' first suggestion is not accepted.

Second, defendants suggest advising potential opt-in plaintiffs that they may be required to participate in written discovery and testify at a deposition and/or trial before a jury.  The Court agrees with this suggestion.  *See Robbins*, 2016 WL 1068201, at *7 (allowing notice form to inform potential opt-in plaintiffs that they "may be required to participate in pre-trial discovery, such as depositions, or to testify at a trial or hearing").

Third, defendants suggest advising potential opt-in plaintiffs that defendants will seek costs and attorneys' fees in the event plaintiffs receive an unfavorable decision in this lawsuit.  The Court agrees with this proposal in part — the notice form may be modified to reflect that opt-in plaintiffs may be required to pay a pro-rata share of defendants' costs in defending the lawsuit in the event plaintiffs lose the lawsuit.  *See id.* (allowing notice form to advise potential opt-in plaintiffs that they "may be required to pay a pro-rata share of Defendants' costs in defending the lawsuit" in the event they "lose the lawsuit").

Fourth, defendants suggest adding defense counsel's contact information to the notice form and inviting potential opt-in plaintiffs to contact defense counsel with any questions they might have about the lawsuit.  This suggestion is rejected because defense counsel should not be privy to sensitive questions or information that potential opt-in plaintiffs may have regarding the lawsuit.  *See Chhab*, 2013 WL 5308004, at *16.

Fifth, defendants propose that potential plaintiffs who wish to join the action return their consent forms not to plaintiffs' counsel but directly to the Clerk of Court.  Defendants withdrew this suggestion at oral argument.

Plaintiffs' counsel shall revise the proposed notice, consent-to-sue form, and text-message notice to reflect these revisions and any other revisions necessitated by the

terms of this Decision and Order. Plaintiffs' counsel shall provide the revised forms to defense counsel, who shall then have seven days to file with the Court any objections relating to the revisions. Based on plaintiffs' representation that a "substantial number of [d]efendants' former employees' primary language is Spanish" (Dkt. No. 28-1 (Pltfs.' Memo. of Law) at 11), the notice, consent-to-sue form, and text-message notice may be translated into Spanish.

   III.   *Manner of Notice*

In order to facilitate notice to potential opt-in plaintiffs, plaintiffs ask the Court to order defendants to provide plaintiffs' counsel with certain information in defendants' possession for all potential opt-in plaintiffs, specifically: names, addresses, telephone numbers, e-mail addresses, work locations, and dates of employment. (Dkt. No. 28-1 (Pltfs.' Memo. of Law) at 1, 10). Plaintiffs further request that their counsel be permitted to send the notice, consent-to-sue form, and text-message notice to these individuals via first-class mail, text message, and e-mail; that defendants be required to post the notice and consent form at its worksites in the same areas where employers are required to post FLSA notices; and that defendants include the notice and consent form with payment of wages to their current employees. (*Id.* at 11-13). Defendants oppose plaintiffs' proposed method of notice, suggesting in the alternative that defendants provide information regarding potential opt-in plaintiff class members to a "disinterested third party" who will then distribute the notice and consent form via first-class mail, only. (Dkt. No. 43 (Defts.' Memo. of Law) at 13-14).

In light of plaintiffs' representations that members of the potential opt-in plaintiff class are migrant and seasonal agricultural workers, that there is high employee turnover,

and that several class members have already changed addresses (Dkt. No. 28-1 (Pltfs.' Memo. of Law) at 11), plaintiffs have justified their need for potential opt-in plaintiffs' addresses, telephone numbers, and e-mail addresses, and plaintiffs may use this information to send the notice, consent form, and text-message notice to potential opt-in plaintiffs via first-class mail, text message, and e-mail. *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv-2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (authorizing text-message notice "given the high turnover characteristic" of defendants' industry); *Acevedo*, 2014 WL 4659366, at *12 (authorizing disclosure of potential opt-in plaintiffs' telephone numbers and e-mail addresses). Posting the notice and consent form in defendants' workplace is appropriate as well given that posting is routinely granted in FLSA cases and has not been shown by defendants to be unduly burdensome. *See Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-CV-6118 CJS, 2016 WL 6524314, at *16 (W.D.N.Y. Nov. 2, 2016). The Court declines, however, to require defendants to include the notice and consent form along with payment of wages to their current employees, as doing so is largely duplicative of posting notice in the workplace. Finally, plaintiffs' counsel, not a third-party administrator, should be responsible for sending the notice and consent form via first-class mail, text message, and e-mail. Employing a third-party administrator to send these documents would simply result in undue cost and delay. Plaintiffs' counsel may also send a reasonable number of reminder post cards, text messages, and e-mails to any potential opt-in plaintiffs who have not responded within thirty days after the initial mailing, texting, and e-mailing of the notice.

In order to facilitate plaintiffs' counsel in sending notice to potential opt-in plaintiffs, defendants are to produce the following information within their possession to plaintiffs'

counsel within ten days of entry of this Decision and Order: names, addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for all potential opt-in plaintiffs who worked for defendants from August 8, 2015 to the present. Although plaintiffs request information dating back to August 8, 2012, a six-year timeframe is not warranted because the potential FLSA opt-in plaintiff class consists of employees who worked for defendants within only three years of the filing of the complaint. Potential opt-in plaintiffs who wish to join this action shall return their consent forms to plaintiffs' counsel, who shall have no more than six months from the date notice is first distributed to file the forms with the Clerk of Court. The thirty-day opt-in deadline proposed by defendants is too short given that it may take plaintiffs' counsel an extended amount of time to track down members of the potential opt-in class, many of whom are migrant and seasonal agricultural workers. *See, e.g.*, *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478-79, 482-83 (E.D. La. 2006) (granting 180-day opt-in period in case involving migrant workers from Mexico and Guatemala); *Roebuck*, 239 F. Supp. 2d. at 240-41 (granting nine-month opt-in period in case involving migrant workers). Plaintiffs are directed to notify the Court in writing of the opt-in deadline date.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for conditional certification of an FLSA collective action (Dkt. No. 28) is granted as set forth herein.

**SO ORDERED.**

Dated: November 26, 2018
Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge