**Worker Justice Center of New York**

April 10, 2020

Hon. Elizabeth A. Wolford
United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

      Re:    Cardenas et al v. A.J. Piedimonte Agricultural Development, LLC; et al;
              Case No. 1:18-cv-881-EAW
              Request to Approve Settlement Agreement

Dear Judge Wolford,

      I represent the Plaintiffs in this matter. On April 10, 2020, the parties reached a settlement agreement of the claims brought in the above-referenced action which include causes of action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* We respectfully seek court approval of the settlement agreement, attached hereto as Exhibit A, in accordance with the jurisprudence espoused in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 549 (W.D.N.Y. 2018).

Claims and Defenses

      Plaintiffs allege that they regularly work long arduous shifts for Defendants and were not paid properly, that their employment rights have been violated, and Defendants' actions constitute violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), the Agricultural Worker Protection Act ("AWPA"), and breach of contract. *See Dkt. 1*.

1

Defendants' Answer denies the substantive allegations in Plaintiffs' Complaint and Defendants vehemently dispute the above allegations and numerous material issues of fact including, but not limited to: Plaintiffs' computation of damages, the number of hours Plaintiffs were performing work that is entitled to the FLSA agricultural exemption to overtime, the amount of time Plaintiffs performed corresponding employment entitled to the Adverse Effect Wage Rate, and the willfulness of any purported violations. *See Dkt. 32*. Defendants also asserted twenty-five affirmative defenses. *Id.*

Procedural History

Plaintiffs Armando Cardenas, Jose F. Cardenas, Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander, and Shonda Tate ("Named Plaintiffs") commenced this lawsuit on August 8, 2018. *Dkt. 1*. On September 18, 2018, Named Plaintiffs moved to conditionally certify a collective action in this lawsuit pursuant to 29 U.S.C. § 216(b) and to authorize notice to the class. *Dkt. 28*. On January 27, 2018, this Court granted Named Plaintiffs' motion, acknowledging that "plaintiffs have come forward with evidence indicating that they and other employees worked more than forty hours a week for defendants without receiving overtime compensation." *Dkt. 48*.

Following the filing of this lawsuit and conditional certification, an additional forty-one (41) individuals have opt-ed in ("Opt-In Plaintiffs") to participate in this lawsuit.[1] The Named

---

[1] The Opt-In Plaintiffs are Araceli Agustin, Tronton Bridley, Clarence Campbell, Christopher Capen, Miguel Cardenas, Bradley Chadsey, Dymon Close, Blossom Coger, April Colson, Chanel Conner, Donovan Conner, Tanya Conner, Logan DiPilato, Adam C. Drawbolt, Hali Edwards, Dean Farquharson, Paul Gulczewski, Jarred Hodgins, Jessi-Ray Ellen Igo, Marvalette Lloyd, Eugenia Maria Lopez Maya, Kenneth McNeil, Jerry Jason Nichols Jr., Everton Ohara, William Allen Page, Tanisha Luz Perez Martinez, Melissa Peruzzini, Pamela Rodriguez, Cheyenne Russaw, Monica Santes, Lynnette Schumacher, Robert Scott, Curtis Siler, Saprina Simmons, Devon Steward, David Saurez Rivera, William Weiss, Benith White, Brian White, Derek H. White, and John T. Willis. Their consents to sue are filed in the docket of this case.

and Opt-In Plaintiffs (collectively "Plaintiffs") total forty-eight (48) individuals who formerly worked for Defendants.

On August 29, 2018, David L. Cook appeared as counsel on behalf of all Defendants, A.J. Piedimonte Agricultural Development, LLC, James J. Piedimonte & Sons, Inc., James J. Piedimonte & Sons, LLC, MAGC, INC., Anthony Joseph Piedimonte and Scott James Bennett. Dkt. 15. On June 25, 2019, Mr. Cook requested to withdraw as counsel and this Court granted his request, leaving all of the defendants unrepresented, including Corporate Defendants A.J. Piedimonte Agricultural Development, LLC; James J. Piedimonte & Sons, Inc.; James J. Piedimonte & Sons, LLC; and MAGC, INC. *Dkt. 81.* Although Mr. Cook withdrew as counsel, he appeared with and participated in advising Defendants throughout the duration of this lawsuit well after his withdrawal, including at a Show Cause Hearing on November 25, 2019; a Settlement Conference on January 14, 2020; and a Status Conference dated February 19, 2020, and the negotiations of the Settlement Agreement. *See Dkt. 91, 95, 96*,

On October 2, 2019, Plaintiffs requested a Clerk's certificate of entry of default against Corporate Defendants for their failure to defend this action and failure to appear with counsel. *Dkt. 85*. The Clerk of Court entered the default on November 4, 2019. *Dkt. 89*. From June 25, 2019 to January 6, 2020, this action progressed from the initial stages of discovery to the eve of trial. *See Dkt. 47, 81 – 91*. On January 7, 2020, Plaintiffs submitted a Motion for Judgment by Default against Corporate Defendants. *See Dkt. 92.*

On January 14, 2020, Plaintiffs and Defendants appeared for a Settlement Conference before the Honorable Michael J. Roemer, where they made significant progress towards a complete resolution of the underlying action. *See Dkt. 95.* On February 19, 2020, Plaintiffs and Defendants appeared for a Status Conference before the Honorable Michael J. Roemer, where

3

they again made significant progress towards a Settlement Agreement that would resolve the underlying action. *See Dkt. 96.* Today, Plaintiffs seek approval of the negotiated Settlement Agreement and Release.

*Cheeks* Factors

Since *Cheeks* Courts in the Second Circuit have required judicial approval of FLSA claims sought to be settled by stipulated dismissal. *Cheeks*, 796 F.3d at 206. Any proposed FLSA settlement agreement must be "fair and reasonable" under the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See De La Rosa v. Chestnut Holdings of N.Y., Inc.*, No. 19-CV-286 (VEC), 2020 U.S. Dist. LEXIS 15994, at *2 (S.D.N.Y. Jan. 30, 2020) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

First, the total settlement amount of $250,000 falls in between Plaintiffs' and Defendants' opening damage computations, with each party maintaining that possible recovery would be significantly greater or less than the settlement amount if a compromise was not reached. Plaintiffs sought entry of a Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure for $783,038.35 in damages and $69,827.19 in attorneys' fees and costs. *See Dkt. 92.* Defendants Anthony Joseph Piedimonte and Scott James Bennett maintain the defenses as laid out in their Answer. *See Dkt. 32.* Although the total settlement amount represents roughly 29% of the damages sought in Plaintiffs' Motion for Default Judgment, it includes a complete resolution of the action and agreement from both Corporate Defendants and the individually

named Defendants Anthony Joseph Piedimonte and Scott James Bennett. The inclusion of the individually named Defendants exponentially increases Plaintiffs likelihood of collecting on the agreement in comparison to a judgment against corporate entities.

Second, this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation and the prospect of securing a judgment may be difficult to collect. Third, from Plaintiff's perspective, the prompt payment of wages and damages is far preferable to continued litigation. From the Defendants' perspective, a complete and final resolution of Plaintiffs' claims is preferable to continued litigation. Plaintiffs are interested in a settlement that eliminates the uncertainty of trial, expedites their receipt of funds, provides closure, and minimizes the disruption to Plaintiffs' lives caused by the requisite active participation of prosecuting this action to a trial and potentially beyond. The litigation risks posed to each party include, although unlikely, complete success or failure and serious potential liability for attorneys' fees and costs. Most notably, the parties negotiated a settlement agreement that will allow Defendants to remain in business and significantly decreases the possibility that Defendants will face bankruptcy.

Fourth, since August 8, 2018, the parties have actively litigated this action, attended numerous pretrial and status conferences, engaged in the significant exchange of discovery including time and payroll records, resolved discovery disputes, completed depositions, attended mandatory mediation before Mediator Nelson Thomas, Esq., and attended a Settlement Conference before the Honorable Michael J. Roemer. *See Dkt. 1 - 98*. The proposed settlement is the result of all of the work each party has put in advancing the litigation to this stage and significant arm's-length bargaining, which has been supervised in part by United States Magistrate Judge, the Honorable Michael J. Roemer. Fifth, this agreement entered into by

Plaintiffs, represented by the Worker Justice Center of New York ("WJCNY"), and Defendants, a sophisticated business operation represented for the purposes of settlement by David Cook, Esq. of Phillips Lytle LLP, is the product of extensive litigation and dispute resolution efforts made in part through this Court's mandatory mediation program. Finally, none of the Plaintiffs and Opt-In Plaintiffs are currently working for Defendants and the Settlement Agreement contains no indicia of fraud or collusion.

Most notably, the parties' proposed settlement does not include the types of provisions discussed in *Cheeks* that contravene FLSA's remedial purposes. *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). In particular, this agreement does not include a confidentiality clause and does not release Plaintiffs' non-employment related claims.

Settlement Distribution

The Settlement Agreement calls for the settlement amount to be distributed according to a formula that weighs each Plaintiff and Opt-In Plaintiffs' total potential recovery. "Distributions for Plaintiffs and Opt-In Plaintiffs shall be calculated by apportioning the net Settlement Amount after attorneys' fees and costs and the claims administrator's costs and distributing it based on each Plaintiffs' proportion of potential recovery, as calculated from Plaintiffs' damages calculation submitted in Plaintiffs' Motion for Judgment by Default, ECF Docket Entry 92." *See Section 2(b)(ii), Exhibit A*. A calculation of each Plaintiffs' settlement distribution is attached hereto as Exhibit B. *See Exhibit B*. This settlement distribution is both fair and reasonable because Plaintiffs' damage calculation, as laid out in Plaintiffs' Motion for Judgment by Default, accurately takes into account each Plaintiffs' potential total recovery based on their hours worked, weeks worked, and the harms suffered while employed by Defendants.

The settlement amount to be distributed among Plaintiffs is $250,000, minus $21,725.00 in claims administration costs and $18,689.70 in attorneys' fees and costs, or approximately 26.765% of what Plaintiffs sought in their Motion for Default Judgment. Information regarding the claims administration costs and attorneys' fees and costs are described below.

Claims Administrator

An agreement of this nature, which requires five installments of payments, tax reporting, and distributions to forty-eight migrant working Plaintiffs and Opt-In Plaintiffs can be extremely complicated to administer. The parties negotiated the settlement agreement to include a "Claims Administrator" who will be responsible for the administration of the terms of the Settlement Agreement. *See Section 1(g), Exhibit A.* The costs for such are currently estimated at $21,725.00 based on a quote provided by SSI Settlement Services, Inc. *See Exhibit C.*

Attorney's Fees

An award of attorneys' fees is also subject to review under *Cheeks* and must be reasonable. *Rainboth-Venditti v. Nat'l Retail Sols, Inc.*, No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). Of the total settlement amount of $250,000, $18,698.70 will be paid to Plaintiff's counsel WJCNY: $3050.70 to reimburse WJCNY for the costs of the filing fee, mediation, service, depositions and other litigation costs, and $15,648.00 as attorney's fees. The number $18,698.70 is calculated in the same manner as each Plaintiffs' settlement distribution has been calculated, by multiplying the total attorneys' fees and costs sought in the Motion for Default Judgment, $69,827.19, by 26.765%. Plaintiffs' attorneys' fees and costs calculation is laid out in more detail in Plaintiffs' Motion for Default Judgment and is supported by contemporaneous time records attached thereto as Exhibit I. *See Dkt. 94-8.* It is important to note that Plaintiffs have significantly reduced the proportion of attorneys' fees

7

sought in the interest of settlement and also will not seek attorneys' fees for the numerous hours expended negotiating this settlement agreement since the attorneys' fees calculation made on January 7th.

As a non-profit public interest law firm, WJCNY represents low-income clients without cost to the clients. None of the settlement funds described above as being paid directly to Plaintiffs will later be paid to WJCNY. In light of over 100s of hours worked by Plaintiffs' counsel on this action and the average hourly rates for attorneys of similar experience practicing in the Western District of New York, the amount of attorneys' fees, which comprise approximately 7% of the total settlement amount, is both fair and reasonable.

Conclusion

For the reasons state above, counsel for Plaintiffs respectfully requests that the Court approve the settlement agreement in this case.

Thank you for your consideration.

                                            Respectfully submitted,

/s/ John A. Marsella
John A. Marsella, Esq.
*Attorney for Plaintiff*
Worker Justice Center of New York, Inc.
1187 Culver Road
Rochester, New York 14609
Tel: (585) 325-3050
jmarsella@wjcny.org

 1187 Culver Rd, Rochester, NY 14609, (585) 325 3050

 9 Main Street, Kingston, NY 12401, (845) 331 6615

 245 Saw Mill River Road, Suite 106, Hawthorne, NY 10532