UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARMANDO CARDENAS, *et al.*,

            Plaintiff,

    v.

A.J. PIEDIMONTE AGRICULTURAL
DEVELOPMENT, LLC, *et al.,*

            Defendants.
_____

**DECISION AND ORDER**

1:18-cv-00881 EAW

# BACKGROUND

Named plaintiffs Armando Cardenas, Jose F. Cardenas, Juanita Senteno, Veronica Simmons Bailey, Isaiah Alexander, Kathy Alexander, and Shonda Tate (collectively "Named Plaintiffs") commenced the instant action on August 8, 2018, on behalf of themselves and all others similarly situated. (Dkt. 1). The Complaint alleges that Named Plaintiffs are former employees of defendants A.J. Piedimonte Agricultural Development, LLC, James J. Piedimonte & Sons, Inc, James J. Piedimonte & Sons, LLC, MAGC, Inc., Anthony Joseph Piedimonte, and Scott James Bennett (collectively "Defendants"), and that, among other things, they were not paid the minimum hourly rates required by law. (*Id.*).

On September 20, 2018, the Court referred the matter to United States Magistrate Judge Michael J. Roemer for supervision of all pre-trial matters except dispositive motions.

(Dkt. 29).¹  On November 27, 2018, Judge Roemer issued a Decision and Order conditionally certifying the matter as a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (Dkt. 48).  In addition to Named Plaintiffs, 41 individuals ("Opt-In Plaintiffs") (together with Named Plaintiffs, "Plaintiffs") have opted-in to participation in this lawsuit.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010) ("Unlike in traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment.").

The parties participated in a mediation session before Nelson Thomas, Esq. on May 21, 2019.  (*See* Dkt. 76).  On January 14, 2020, Judge Roemer presided over a settlement conference wherein the parties made significant process towards a mutually agreeable resolution of the matter.  (*See* Dkt. 95; Dkt. 99 at 3).  The parties appeared before Judge Roemer again on February 19, 2020, and engaged in further settlement negotiations.  (*See* Dkt. 96; Dkt. 99 at 3-4).  On April 10, 2020, the parties submitted to the Court a joint letter request for approval of their negotiated Settlement Agreement and Release.  (Dkt. 99).

The Court has reviewed the negotiated Settlement Agreement and Release (Dkt. 99-1) (the "Settlement Agreement"), and approves it—with one modification—for the reasons set forth below.

---

¹  The referral to Judge Roemer was subsequently modified to include hearing and reporting upon dispositive motions for the consideration of the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  (Dkt. 88).

## DISCUSSION

### I. Legal Standard

Plaintiffs have not moved to certify this case as a class action pursuant to Federal Rule of Civil Procedure 23 and the deadline for doing so has long since passed. (*See* Dkt. 47 at ¶ 8 (deadline to move for class certification was October 4, 2019)). Accordingly, the Settlement Agreement does not impact the rights of any non-parties, and the Court need not consider whether the requirements to maintain a class action are satisfied. *See Scott v. Chipotle Mexican Grill*, Inc., 954 F.3d 502, 520 (2d Cir. 2020) ("[T]he requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)."); *Surdu v. Madison Glob., LLC*, No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) ("[S]ettlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date."). Instead, as an initial matter, the Court must satisfy itself that Opt-In Plaintiffs are "similarly situated" to Named Plaintiffs before it can finally determine that a collective action is appropriate. *See Marichal v. Attending Home Care Servs.*, LLC, 432 F. Supp. 3d 271, 277 (E.D.N.Y. 2020) ("The Court can conclude that the opt-in plaintiffs are in fact similarly situated, either following motion practice by the parties or through its review of a proposed settlement agreement[.]").

Further, "an employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the

Secretary of Labor or made pursuant to a judicially supervised stipulated settlement," and in the latter case, "before a district court enters judgment, it must scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Such analysis is frequently referred to as a *Cheeks* analysis, in reference to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). In performing the *Cheeks* analysis, the Court considers the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky,* 900 F. Supp. 2d at 335 (quotation omitted). "There is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Cabrera v. CBS Corp.*, No. 17-CV-6011 CM BCM, 2019 WL 502131, at *5 (S.D.N.Y. Feb. 8, 2019) (quotation omitted).

## II.   Final Certification of Collective Action

The Court first considers whether Named Plaintiffs and Opt-In Plaintiffs are "similarly situated" such that final certification of the collective action is warranted. As the Second Circuit recently held, in this context "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. The Court easily concludes that this standard is met

- 4 -

here.  The record in this matter supports the conclusion that Plaintiffs were employed by Defendants in sufficiently similar roles and that there are common issues of law and fact regarding whether they were paid the minimum wage required by law.  (*See, e.g.,* Dkt. 92-1 at 9; Dkt. 92-2; Dkt. 92-3; Dkt. 92-4; Dkt. 93-1).  In particular, there are common questions as to the applicability of the FLSA's exemption of agricultural employees from its overtime requirements, *see* 28 U.S.C. § 213(b)(12), and by definition the collective action consists solely of individuals who performed physical labor for Defendants for more than 40 hours in a week and were paid on an hourly basis but did not receive overtime compensation (*see* Dkt. 48 at 9).  Accordingly, the Court finds that Named Plaintiffs and Opt-In Plaintiffs share a "similarity with respect to an issue of law or fact material to the disposition of their FLSA claim," *Scott*, 954 F.3d at 516 n.4, and grants final certification of the collective action.

**III.     Assessment of Settlement Agreement**

The Court turns next to the substance of the Settlement Agreement.  As an initial matter, the Court notes that "the named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required." *Marichal*, 432 F. Supp. 3d at 279.  Courts often satisfy this requirement by using "a two-tiered procedure: first, the parties file a motion for preliminary approval of the settlement and request approval of a notice. . . .  As a second step, the parties file a motion for final approval, and the Court conducts a final fairness hearing, giving all opt-in plaintiffs the opportunity to be heard by the Court." *Id*. at 280.  However, such a two-step procedure is not necessary in every case; for example,

it is not required where each opt-in plaintiff has assented to the terms of the proposed settlement.  *See id*. at 284 n.4.

In this case, all of the Opt-In Plaintiffs have actively participated in the litigation and Plaintiffs' counsel has affirmatively represented to the Court that all the Opt-In Plaintiffs have verbally authorized counsel to enter into the Settlement Agreement on their behalves.  (*See* Dkt. 100 at 2).  Further, the Settlement Agreement provides that Opt-In Plaintiffs release their claims against Defendants only by signing their settlement checks.  (Dkt. 99-1 at 10).  In other words, "Opt-In Plaintiffs will not be bound by the terms of the [Settlement Agreement] unless they affirmatively choose to endorse the check and accept the [Settlement Agreement].  Opt-In Plaintiffs who do not endorse the check will not release any claims and will not be prejudiced."  (Dkt. 100 at 5).  On the specific facts of this case, where all of the Opt-In Plaintiffs have actively participated in the litigation and have authorized Plaintiffs' counsel to enter into the Settlement Agreement on their behalves, the Court finds this procedural mechanism sufficient to ensure that the Opt-In Plaintiffs have consented to the terms of the Settlement Agreement.  *See, e.g., Ramirez v. Soc. 8th Ave Corp.*, No. 18-CV-2061 (OTW), 2019 WL 1382711, at *1 (S.D.N.Y. Mar. 26, 2019) (approving settlement of FLSA collective action in single-step process); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *3 (S.D.N.Y. Nov. 6, 2015) ("Since *Cheeks* was decided, courts have taken a number of approaches to the approval of wage-and-hour settlements.  For example, many judges in this District now require the parties (to the extent they are seeking to dismiss the action with prejudice) to file a joint letter-motion requesting approval of the settlement agreement (or alternatively provide

documentation of DOL approval) on the public docket and explaining why the proposed settlement is fair and reasonable. Once such letter-motions are filed, the court then evaluates the settlement, and assuming it concludes it is fair and reasonable, approves the settlement in a docketed order without holding a formal hearing.").

With respect to the required *Cheeks* analysis, the Court finds the Settlement Agreement fair and reasonable. As to the first factor, the total settlement amount in this matter is $250,000.00,[2] which falls in between the parties' opening damages computations. The total settlement amount is approximately 30% of the amount that Plaintiffs sought in their still-pending motion for default judgment (Dkt. 92), which sets forth detailed calculations of the potential damages.[3] Considered in the context of the time and expense associated with continuing to litigate this matter and the defenses asserted by Defendants, the Court finds the proposed settlement amount acceptable. *See, e.g., Lara v. Air Sea Land Shipping & Moving Inc.*, No. 19-CV-8486 PGG BCM, 2019 WL 6117588, at *2 (S.D.N.Y. Nov. 18, 2019) (approving settlement of FLSA overtime claim for approximately 30% of potential recovery where "damages would be vigorously contested, making a compromise figure appropriate for settlement"). The Court notes that each of the Plaintiffs will receive a meaningful payment (ranging from $710.17 to $27,165.42). (*See* Dkt. 99-2 at 1); *cf. Cabrera v. CBS Corp.*, 2019 WL 502131, at *5 (rejecting proposed settlement where the

---

[2]   This settlement amount is to be paid and distributed in five equal installments. (*See* Dkt. 99-1 at 4-5).

[3]   This motion, which is based on the failure of the corporate defendants to retain new counsel after their prior counsel was granted permission to withdraw (*see* Dkt. 81; Dkt. 82; Dkt. 85), is mooted by the Court's approval of the Settlement Agreement.

plaintiffs "would receive no settlement payment at all").  There is also no reversion to Defendants—in other words, in the event any Plaintiff opts not to claim his or her share of the settlement amount, the unclaimed funds will be redistributed to the remaining Plaintiffs. (*See* Dkt. 99-1 at 6).

As to the second and third factors, the costs and risks to Plaintiffs of continuing with this litigation are very real.  As the Court noted above, Defendants have asserted that the FLSA's overtime exemption for agricultural workers applies in this case, a fact-intensive issue on which either party might prevail.  Further, while Plaintiffs have sought default judgment as to the corporate defendants, the individual defendants concededly have not defaulted.  As the parties have explained, inclusion of the individual defendants in the Settlement Agreement "increases Plaintiffs['] likelihood of collecting . . . in comparison to a judgment against corporate entities."  (Dkt. 99 at 5).  Plaintiffs' likelihood of collecting is further enhanced by the fact that the Settlement Agreement "will allow Defendants to remain in business and significantly decreases the possibility that Defendants will face bankruptcy." (*Id.*).  Further, the Settlement Agreement avoids the disruption to Plaintiffs' lives and ability to work that would be occasioned by a trial.

Finally, turning to the fourth and fifth factors, the Settlement Agreement was negotiated at arm's-length by experienced counsel.  Plaintiffs are represented by the Worker Justice Center of New York ("WJCNY"), and Defendants were previously represented by David Cook, Esq., a partner at Phillips Lytle LLP.  (*See* Dkt. 99 at 6).  The settlement negotiations were overseen in significant part by Judge Roemer.  There are no

indicia of fraud or collusion, and none of the Plaintiffs are currently employed by Defendants, so potential fear of reprisal is not a factor.

The Settlement Agreement also does not include certain types of provisions that courts have found problematic in the FLSA context. Specifically, it does not contain a confidentiality provision or an overbroad release including non-employment claims. *See, e.g., Lara*, 2019 WL 61117588 ("As this Court and other courts have frequently explained . . . confidentiality clauses are contrary to public policy and the remedial purposes of the FLSA because they prevent the spread of information about FLSA actions to other workers who could then use that information to vindicate their own statutory rights[.]" (quotations and original alterations omitted)); *Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *3 (D. Conn. June 22, 2018) ("This Court previously declined approval because the Settlement Agreement had a broad release section that swept beyond the release of the type of claim settled in this FLSA action, especially given the inclusion of past and future claims under tort, common law, or federal, state, and local human rights law. Courts within the Second Circuit have rejected such agreements." (quotation and citation omitted)).

However, the Settlement Agreement does contain a non-disparagement clause, which can also be impermissible in the FLSA context. *See Lara*, 2019 WL 61117588, at *3. "'Although not all non-disparagement clauses are *per se* objectionable,' if the provision 'would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *Lazaro-Garcia v. Sengupta Food Servs.*, 15-CV-4259, 2015 WL 9162701, at

- 9 -

*3 (S.D.N.Y. Dec. 15, 2015) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015)).  The non-disparagement clause in this case is very broad, stating that "[t]he parties mutually agree that they shall not make any oral or written statement that disparages the other party."  (Dkt. 99-1 at 11).  The Court cannot approve this non-disparagement clause as written.

However, the Settlement Agreement also contains a severability clause, which provides that "[i]f any term or provision of this Agreement, or the application thereof to any person or circumstances . . ., will to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such terms to persons or circumstances other than those as to which it is invalid or unenforceable, will not be affected thereby." (*Id.* at 12).  Under these circumstances, the Court can condition its approval on striking or modifying the non-disparagement clause.  *See Lara*, 2019 WL 61117588, at *3 ("Rather than withhold approval of the parties' settlement on the ground that the release, confidentiality, and non-disparagement clauses are not fair to the plaintiff, however, the Court relies on the Agreement's severability clause [to modify the release and strike the confidentiality and non-disparagement clauses].").  In particular, the Court conditions its approval on the parties either (1) striking the non-disparagement clause in its entirety or (2) modifying it to read as follows: "The parties mutually agree that they shall not make any oral or written statement that disparages the other party, except that Plaintiffs are not prohibited from making truthful statements about their experiences litigating this lawsuit."

### IV. Approval of Claims Administrator

The Settlement Agreement anticipates the use of a claims administrator to administer payment of the settlement funds. (*See* Dkt. 99-1 at 3). The Court agrees with the parties that given the complex administration required in this case—particularly the need to issue five rounds of payments—it is appropriate to retain a claims administrator.

The parties have agreed to retain Settlement Services, Inc., as Claims Administrator, and ask the Court to approve a fee of $21,725.00. (Dkt. 99 at 7). The Court finds this fee reasonable and approves this aspect of the parties' agreement. *See, e.g., Chang v. Philips Bryant Park LLC,* No. 17-CV-8816-LTS-SLC, 2019 WL 8105999, at *4 (S.D.N.Y. Oct. 23, 2019) (approving settlement agreement with provision for up to $30,000 in fees for claims administrator), *adopted*, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020); *Flores v. Mamma Lombardi's of Holbrook, Inc*., 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ("Courts within this district have awarded up to $50,000 for the settlement claims administrator.").

### V. Attorneys' Fees and Costs

Finally, the Court considers Plaintiff's request for attorneys' fees. In accordance with *Cheeks*, the Court reviews a request for attorneys' fees to ensure that it is reasonable. *See Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 WL 3765750, at *3 (S.D.N.Y. Aug. 8, 2019). Here, WJCNY has request requested a payment of $18,698.70—$3,050.70 in costs and $15,648.00 in attorneys' fees. (Dkt. 99 at 7). This figure was calculated by "multiplying the total attorneys' fees and costs sought in the Motion for Default Judgment, $69,827.19, by 26.765%," which is the same manner in which each Plaintiffs' proportionate share of the settlement amount was calculated. (*Id*.).

The Court finds that the fees requested in this case are plainly reasonable. "In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, Plaintiffs' counsel requested $66,776.49 ($69,827.19 less the $3,050.70 in costs) in fees in connection with the motion for default judgment, and supported that request with detailed contemporaneous time records. (*See* Dkt. 93; Dkt. 94-8). The requested hourly rates range from $85-$100 per hour for paralegals, to $200 per hour for an attorney with seven years of experience, to $300 per hour for the Legal Director of the WJCNY, who has more than 15 years of relevant legal experience. (*See* Dkt. 93 at ¶¶ 39-61). Having reviewed the contemporaneous records, the Court finds the time expended on this matter reasonable, and further notes that Plaintiffs have not sought any additional attorneys' fees for the time expended after the default judgment motion was filed, including time spent negotiating settlement and drafting the Settlement Agreement. The requested hourly rates are also consistent with those approved in other FLSA actions in this District. *See, e.g., Snead v. Interim Healthcare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018) (finding $200 per hour a reasonable fee for attorney with seven years of experience); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (finding $200 per hour a reasonable average hourly rate in FLSA litigation); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 413 (W.D.N.Y. 2011) (finding $195 per hour for an associate reasonable in FLSA litigation); *Falleson v. Paul T. Freund*

*Corp.*, 736 F. Supp. 2d 673, 676 (W.D.N.Y. 2010) (concluding that $215 per hour was a reasonable average rate for the work of the attorneys and paralegals in FLSA case).

The Court thus finds a lodestar amount of $66,776.49 to be a reasonable starting point in assessing the reasonableness of the fee request. Plaintiffs' attorneys seek only a fraction of that amount, which already failed to reflect much of the time they spent on settlement of this matter. Further, the requested fees and costs together amount to only approximately 7% of the total settlement amount. By any measure, the requested fees are reasonable.

The Court further approves Plaintiffs' request that counsel be reimbursed $3,050.70 in costs. Plaintiffs' counsel has set forth the breakdown of the requested costs (namely, $400.00 for the filing fee, $255.00 in service costs, $200.00 in postage costs for mailing notice to potential opt-in plaintiffs, and $2185.70 for depositions) (*see* Dkt. 93 at ¶ 6) and have further provided documentation therefor (*see* Dkt. 94-8 at 20-23).

## CONCLUSION

For the reasons set forth above, the Court approves the Settlement Agreement, subject to modification of the non-disparagement provision. The Court further approves a fee of $21,725.00 for the Claims Administrator, and a payment of $3,050.70 in costs and $15,648.00 in attorneys' fees to Plaintiffs' counsel.

Pursuant to the terms of the Settlement Agreement, the parties shall exchange signed copies thereof within seven days of entry of this Decision and Order. Plaintiffs shall thereafter file a stipulation of dismissal, again in accordance with the terms of the Settlement Agreement.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 25, 2020
Rochester, New York